576 P.2d 752

K. L. HOUSE CONSTRUCTION CO., INC., a New Mexico Corporation, and Western Casualty and Surety Company, a Foreign Corporation authorized to do business in New Mexico, Plaintiffs-Appellants,

v.

The CITY OF ALBUQUERQUE, New Mexico, a Municipal Corporation, Defendant-Appellee.

No. 11580.

Supreme Court of New Mexico.

March 30, 1978.

Hannett, Hannett, Cornish & Barnhart, Charles E. Barnhart, Scott Oliver, Albuquerque, for plaintiffs-appellants.

Sutin, Thayer & Browne, Irwin S. Moise, Raymond Schowers, Albuquerque, for defendant-appellee.

## OPINION

PAYNE, Justice.

Appellants sought a declaratory judgment, requesting the district court to construe certain contracts and declare that appellants had fulfilled their obligations under the contracts. Upon the application of appellee, The City of Albuquerque, the district court stayed the proceedings and ordered arbitration. The arbitrators granted the City an award of $125,000. The district court confirmed the award and denied the

appellants' motion to vacate, modify or correct the award. This appeal seeks a review of the district court order allowing arbitration and the subsequent order confirming the arbitration award.

In April, 1973, the City engaged K. L. House Construction Co. to perform certain additions and other work on a manufacturing plant which the City leases to industrial users. A part of this contract involved a roofing job which House subcontracted to Jack Pope, Inc. Under the contract a "forty year roof" was to be applied. The contract provided that House would give the City a one year warranty on all its work, and further provided that the roofer, Pope, would give a two year warranty running directly to the City. Appellant, Western Casualty & Surety Company, wrote performance bonds to the City in behalf of House. The work was completed and the job was accepted by the City on November 3, 1973.

█ The trial court entered a finding, supported by substantial evidence, that within the one year warranty period the City gave notice to House that there were some problems with the roof. Within its two year warranty period Pope made certain repairs on the roof. After the expiration of both warranty periods the City sought to have the entire roof replaced, asserting that the roofing job failed to meet the requirements of the contract. The appellants, House, Pope and Western, sought a declaratory judgment from the district court that the acceptance of the job by the City and the expiration of the warranty periods satisfied all the terms of the contract with regards to the roof. The City sought to have this issue determined under the arbitration clause in the contract which provided as follows:

7.10 ARBITRATION

7.10.1 All claims, disputes and other matters in question arising out of, or relating to, this Contract or the breach thereof, . . . shall be decided by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association then obtaining

unless the parties mutually agree otherwise. This agreement so to arbitrate shall be specifically enforceable under the prevailing arbitration law. The award rendered by the arbitrators shall be final, and judgment may be entered upon it in accordance with applicable law in any court having jurisdiction thereof.

Appellants claim that arbitration is inappropriate because the dispute did not arise out of the contract but is a dispute which arose after the contract had been completed. The appellants argue that the matter should therefore be determined by a trial in district court. We cannot agree with this position.

In addition to the provisions of the arbitration clause in the contract entered into between the parties, the Uniform Arbitration Act adopted by New Mexico provides in § 22-3-9, N.M.S.A.1953 (Supp.1975) as follows:

A written agreement to submit any existing controversy to arbitration or a provision in a written contract to submit to arbitration any controversy thereafter arising between the parties is valid, enforceable and irrevocable, save upon such grounds as exist at law or in equity for the revocation of any contract.

The agreement between the parties provided that "[a]ll claims, disputes and other matters in question arising out of, or relating to, this Contract or the breach thereof, . . . shall be decided by arbitration." We hold that any disputes pertaining to the performance of the contract, even if they arise after the warranty has expired, are disputes which arise out of the contract and are therefore subject to arbitration.

We adopt the reasoning of the New York Court of Appeals which said:

[T]he announced policy of this State favors and encourages arbitration as a means of conserving the time and resources of the courts and the contracting parties. . . . To this end the Legislature has assigned the courts a minimal role in supervising arbitration practice and procedures.

Generally it is for the courts to make the initial determination as to whether the dispute is arbitrable, that is "whether the parties have agreed to arbitrate the particular dispute" . . .

[T]ypically the parties adopt a "broad" arbitration clause agreeing generally to submit to arbitration all disputes arising out of the contract, or any dispute relating to the meaning and interpretation of the underlying agreement. Then the scope of the arbitration clause and the scope of the underlying agreement are identical, and disputes over interpretation run the hazard of being refined into questions of arbitrability. . . .

The way out of this apparent dilemma of course is to recognize that although the courts and the arbitrators in these cases cover the same field, they perform very different functions. Basically the courts perform the initial screening process designed to determine in general terms whether the parties have agreed that the subject matter under dispute should be submitted to arbitration. Once it appears that there is, or is not a reasonable relationship between the subject matter of the dispute and the general subject matter of the underlying contract, the court's inquiry is ended.

*Nationwide Gen. Ins. Co. v. Investors Ins. Co. of Am.*, 37 N.Y.2d 91, 95, 96, 371 N.Y. S.2d 463, 466, 332 N.E.2d 333, 335 (1975).

■ In the present case the subject matter of the dispute has a reasonable relationship to the subject matter of the contract. It would be inconsistent to hold that the parties intended to arbitrate only disputes which were discovered during the period of construction or any short warranty period following thereafter. When a broad and general arbitration clause is used, as in this case, the court should be very reluctant to interpose itself between the parties and the arbitration upon which they have agreed. When the parties agree to arbitrate any potential claims or disputes arising out of their relationships by contract or otherwise, the arbitration agreement will be given broad interpretation unless the parties

themselves limit arbitration to specific areas or matters. Barring such limiting language, the courts only decide the threshold question of whether there is an agreement to arbitrate. If so, the court should order arbitration. If not, arbitration should be refused. We therefore affirm the decision of the district court in submitting the matter to arbitration.

■ The appellants also claim that the arbitration award should have been vacated. The New Mexico Arbitration Act sets forth the grounds for vacating an award. § 22–3–20, N.M.S.A.1953 (Supp.1975). Appellants contend that there was evident partiality and misconduct by the arbitrators prejudicing their rights.

The claim of misconduct by the arbitrators asserted by appellants is based upon two evidentiary matters. An opening statement by counsel for the City was presented to the arbitrators in a written form. It included documents with a synopsis of what the City's position would be as to each document and a summary of what other witnesses would prove. Appellants argue that this deprived them of the opportunity to effectively cross-examine on those matters before they were reviewed by the arbitrators. Conversely, a written article tendered by appellants to the arbitrators was refused as being hearsay.

Misconduct of an arbitrator was discussed in *Lee v. Providence Washington Ins. Co.*, 82 Mont. 264, 274, 266 P. 640, 643 (1928), wherein the court stated:

The word "misconduct," as employed in the first statement of the rule, is comprehensive enough to include "misfeasance" and "malfeasance." As variously defined, misfeasance is the improper doing of an act which a person might lawfully do; malfeasance is the doing of an act which a person ought not to do at all. . . . Misfeasance is the wrongful and injurious exercise of lawful authority, or the doing of a lawful act in an unlawful manner. Malfeasance is the unjust performance of some act which the party had no right, or which he had contracted not, to do. . . . Misfeasance

is the wrongful or injurious exercise of lawful authority, or the doing of a lawful act in an unlawful manner, while malfeasance is doing an act which is positively unlawful or wrongful. (Citations omitted.)

The evidentiary rulings by the arbitrators did not constitute misconduct within the meaning of the statute. The only record before us indicates that the evidence either included in the opening statement or excluded in the written article was cumulative and testified to by other witnesses. Appellants were not injured by either act.

We affirm the trial court.

IT IS SO ORDERED.

McMANUS, C. J., and EASLEY, J., concur.